**IN THE COURT OF APPEALS OF IOWA**

No. 25-0533
Filed June 18, 2025

**IN THE INTEREST OF S.M.,**
**Minor Child,**

**C.P., Mother,**
        Appellant,

**D.M., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Jones County, Joan M. Black, Judge.

A mother and father both appeal the termination of their parental rights to their daughter. **AFFIRMED ON BOTH APPEALS**.

Michelle M. Jay of Bray & Klockau, Iowa City, for appellant mother.

Phillip D. Seidl of Seidl & Seidl, P.L.C., Cedar Rapids, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Robert Davison, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered without oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**LANGHOLZ, Judge.**

A daughter was removed from her mother's and father's custody in 2024 over concerns that both were sexually abusing her.[1]  After the daughter was removed, the mother and father cycled in and out of homelessness, living in their car for most of the time.  They also struggled maintaining employment, living mostly off the father's social security benefits.  More than a year from that removal, the juvenile court found that the daughter could not safely be returned to either parent—not then or in another six months—and that providing more services would not correct the conditions that led to the sexual abuse of the daughter.  And so, the court terminated both parents' parental rights.  Each now separately appeals.

On our de novo review, we agree with the juvenile court.  The State proved the statutory ground for terminating the mother's and father's parental rights under Iowa Code section 232.116(1)(f) (2024) because the daughter could not be returned to either parent's care at the time of the termination hearing.  And termination of the mother's and father's parental rights is in the best interest of the daughter because of the safety concerns that are still present and the parents' failure to address their mental-health concerns.  What's more, the daughter is doing well in her current foster-care placement and is bonded with her foster mom.  Additional time for reunification is not appropriate—the daughter deserves permanency now.  We thus affirm on both appeals.

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public.  *Compare* Iowa Code § 232.147(2) (2024), *with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

## I.      Factual Background and Proceedings

In January 2024, a then-five-year-old daughter came to the attention of the Iowa Department of Health and Human Services ("HHS") after allegations were made that the daughter had been sexually abused by her mother and father.  At the time, the mother, father, and daughter were living with another family.  While HHS was investigating, the daughter was allowed to stay in the care of the family under a safety plan that required the mother and father live elsewhere and not have any contact with the daughter.  A week later, the plan was revised to let the parents move back in with the family on the condition that they have no unsupervised contact with the daughter.  But the father refused to agree to this safety plan and made threats to take the daughter and leave the state.  So the court temporarily removed the daughter from the parents' custody.  And about a month later, the daughter was adjudicated in need of assistance.

The daughter was placed in foster care, and the parents had semi-supervised visits.  During this time, the parents were responsible for taking the daughter to her mental-health appointments.  The parents were "essentially homeless," paying for hotel rooms daily or living with people they found on social media.  And both were unemployed except for the father's occasional work as a DoorDasher.  Their only regular income was the father's social security benefits.

The next month, after considering the daughter's limited child-protection-center interview and the parents' responses, HHS decided that there was insufficient evidence to confirm the sexual abuse allegations.  Then in May, HHS moved the parents' visits to fully supervised because they were failing to take the daughter to her therapy appointments and were having unapproved, unsupervised

time with the daughter. And a few months later, visitation had to be moved to an agency because the parents reported that they were living in their car.

The daughter's foster-home placement was changed a few times—to be closer to her parents and then because of some behavioral issues. But she has been doing well in the most recent placement since September 2024. A couple of months after that placement, the sexual-abuse investigation was reopened because of the daughter repeatedly providing more details about abuse by each parent. Given this additional evidence, HHS confirmed the allegation in November.

Both parents had previous mental-health diagnoses and had been the victims of sexual abuse. According to a psychological evaluation, both parents have IQ scores in the "borderline range of intellectual function." And both were recommended to continue mental-health treatment. They have generally done so. As of November 2024, the mother had participated in seventeen therapy sessions since the start of the case with a couple month-or-so periods where she did not. The mother's therapist says she "actively engages" in sessions, but the therapist did "not see any intentional follow-through" from the mother. The father has participated in twenty-five therapy sessions from December 2023 to November 2024. His therapist reported that the father "won't accept or follow through with recommendations" and "[h]e is avoidant and doesn't hold himself accountable as he feels like other people/HHS are to blame and are setting him up to fail."

A couple of weeks before trial, the parents moved into a two-bedroom apartment with a month-to-month lease. Another woman, whom they met online and helped leave a supported-living environment in Minnesota, also lives with them. This woman has mental-health and intellectual-functioning concerns. And

shortly before trial, she gave birth to a child that the father is helping parent as his own. The father describes the woman as his girlfriend. And the parents shared that if the daughter returned to their custody, the daughter would have one of the bedrooms to herself and the three adults and the baby would sleep in the other.

On the State's petition, a termination hearing was held in March 2025, where both parents testified. The guardian ad litem supported termination. And the juvenile court ultimately agreed, terminating the parental rights of both parents. In a thorough and well-reasoned decision, the court found that the State proved termination was warranted for both parents under paragraphs "f" and "i" of Iowa Code section 232.116(1) and that termination was in the daughter's best interest. The court reasoned that the parents have not "demonstrated an understanding of the issues at hand," they "remain at fully supervised visits, with no indication that that level of supervision could change in the coming months," and they "are not stable in their own lives" so "it is unrealistic to believe that they could effectively provide the structure, care, and safety that [the daughter] deserves." The court also declined the parents' request for additional time, finding that it was not in the daughter's best interest as her "need for permanency is critical due to her young age and the length of time she has been removed."

Both parents now appeal the juvenile court's order.[2]

---

[2] The mother and father both filed "resistances" to the State's responses to their petitions on appeal, seeking to strike the responses because they were allegedly late. But the responses were timely filed. The parents' calculations of the State's deadline overlook the extra three days added because their petitions were served on the State by the electronic filing system, *see* Iowa R. App. P. 6.702(5); Iowa R. Elec. P. 16.317, and the extension of deadlines falling on Saturday or Sunday until the next Monday, *see* Iowa Code § 4.1(34). We thus deny both requests to strike the State's responses.

## II.     Ground for Termination

Terminating parental rights under Iowa Code chapter 232 follows a three-step process.  *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).  First, the State must prove a statutory ground for termination.  *Id.*  Second, the State must show termination is in the best interest of the child.  *Id.*  And finally, the parent bears the burden to show whether a discretionary exception applies that should preclude termination.  *Id.*  We review a termination decision de novo, giving "respectful consideration" to the juvenile court's factual findings, especially when based on credibility determinations.  *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

The juvenile court terminated the mother's and father's parental rights under both paragraphs "f" and "i" of Iowa Code sections 232.116(1).  Because we may affirm if any ground is adequately supported, *see In re L.H.*, 949 N.W.2d 268, 270 (Iowa Ct. App. 2020), we elect to consider only paragraph "f."  The first three elements of that ground are not in dispute—the daughter is older than four years old, was adjudicated a child in need of assistance, and has been removed from the home for more than twelve of the last eighteen months.  *See* Iowa Code § 232.116(1)(f)(1)–(3).  So we focus on the fourth element—whether clear and convincing evidence shows the daughter could not be returned to her parents' custody at the time of the termination hearing.  *See id.* § 232.116(1)(f)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

The mother argues that "[m]inimal safety concerns exist" regarding returning the daughter to her care and that the daughter "could be safely returned to the mother's care."  She points to the services she has utilized and how she has maintained contact with the daughter as evidence that she "made progress toward

reunification" and that the daughter could be returned to her care. And the father argues that the State did not prove that the daughter could not be returned to his care, pointing to his engagement in services, attending visits with the daughter, and securing housing. We disagree with both the mother and father.

At the time of the termination hearing, concerns still existed relating to the parents and their instability. Neither the mother nor father are employed. And the only consistent income they have is from the father's social security benefits and his occasional earnings as a DoorDasher. At the termination hearing, the father admitted that if the daughter was returned to their care, financially they would be "struggling a lot more." The parents' housing has also been unstable—not having housing of their own since the daughter was born until just a month before the termination hearing. Before moving into that apartment, they lived with friends or out of their car. But their current apartment lease is a month-to-month lease, and it is uncertain whether they will continue to be able to afford the rent if the daughter would return to live with them.

Perhaps more concerning is the parents' inability to acknowledge and take responsibility for the daughter's sexual abuse. For most of the case, the parents have denied that the daughter has been a victim of sexual abuse at all, and they continue to deny that they perpetrated the abuse despite the contrary evidence— believed by the juvenile court—that led to the founded child abuse report by HHS. "Refusal or inability to address the danger of sexual abuse amounts to a safety risk to the" daughter. *In re A.V.*, No. 23-1916, 2024 WL 1757554, at *4 (Iowa Ct. App. Apr. 24, 2024) (cleaned up). It is not safe to return the daughter to their care. And

what's more, the parents regressed back to fully supervised visits, further showing that they were not prepared for the daughter to return to their custody.

We find that there is clear and convincing evidence that the daughter could not be returned to the custody of either parent at the time of the hearing. And we agree with the juvenile court that the mother and father "lack insight into their parenting faults" and "[t]hey do not seem to have a realistic grasp on what it takes to maintain a household." So we affirm the juvenile court's finding that termination is appropriate under Iowa Code section 232.116(1)(f).

### III.     Best Interest of the Child

The parents also challenge the second step—whether it is in the daughter's best interest to terminate their parental rights.[3] In arguing that termination is not in the daughter's best interest, the mother argues that her and the daughter have a bond and the daughter would "suffer no ill effects" if she were returned to her mother's care. And the father argues that he also has a close relationship with the daughter and that "relationship must be supported and preserved."

The best interest of the child is the "paramount concern in a termination proceeding." *L.B.*, 970 N.W.2d at 313. We consider both the daughter's long-

---

[3] Both parents argue as a single issue that the juvenile court "erred in finding that termination of [each parent's] parental rights was in the best interest of the child pursuant to Iowa Code section 232.116(3)," the statutory provision that includes several permissive exceptions to termination. But neither parent properly preserved any argument about those exceptions, including the parent-child bond exception, by arguing for the exception in the juvenile court. *See In re J.R.*, __ N.W.3d __, __ 2025 WL 52738, at *2 (Iowa Ct. App. 2025) (en banc). So because much of their argument is about the best-interest step of the analysis, and we can consider whether the State has met its burden on that step regardless of the parties' arguments in the juvenile court, *see id.*, we construe their petitions as challenging this second step.

range and immediate best interest. *See In re C.K.,* 558 N.W.2d 170, 172 (Iowa 1997). And we must give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see also In re M.W.,* 876 N.W.2d 212, 224 (Iowa 2016).

We agree with the juvenile court that termination is in the daughter's best interest. While we commend both parents for attending sessions for their mental health, both of their therapists have reported that the parents do not apply what they are learning and that the father "won't accept or follow through with recommendations." When the parents do not apply what they are learning, the sessions lose their value. The daughter also struggles before and after visits with the parents, displaying an "increase in nervousness, anxiety, anger, and aggression." The HHS worker who testified and the daughter's own therapist believe that further time with the parents would cause the daughter more trauma. We agree with the juvenile court that the mother and father "are not stable in their own lives, [and] it is unrealistic to believe that they could effectively provide the structure, care, and safety that [the daughter] deserves."

As for the bond that the daughter shares with the parents, we do not doubt that there is a bond there, but we do not think termination would be detrimental to the daughter because of the bond. The daughter is doing well in her most recent foster care placement, and she has a "great bond" with her foster mother. We thus affirm the juvenile court's decision that termination of the mother's and father's parental rights is in the best interest of the daughter.

**IV.    Additional Time**

The mother and father argue that the juvenile court should have granted them six more months to work toward reunification rather than terminating their rights.  Juvenile courts may "deny termination and give the parent an additional six months for reunification only if the need for removal 'will no longer exist at the end of the additional six-month period.'" *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (quoting Iowa Code § 232.104(2)(b)).  As with other issues within termination proceedings, our review is de novo.  *Id.* at 322.

We agree with the juvenile court that granting the parents additional time is not in the daughter's best interest here.  "[W]e cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."  *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).  These proceedings have been going on for around fourteen months, giving the parents ample time to make progress toward reunification.  But we agree with the juvenile court that little progress has been made and see no prospect that another six months would lead to any different results.  The daughter deserves permanency now.  The mother and father undoubtedly love their daughter, but it is in the daughter's physical, mental, and emotional best interest to terminate the mother's and father's parental rights.  We thus affirm the juvenile court's termination of the mother's and father's parental rights.

**AFFIRMED ON BOTH APPEALS**.